# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 22-1876

———————————————————

Micah B. Riggs

*Plaintiff - Appellant*

v.

Robert Gibbs, in his official capacity as a Kansas City, Missouri Police
Department Officer, and, as an individual

*Defendant - Appellee*

David Barbour, in his official capacity as a Kansas City, Missouri Police
Department Officer, and, as an individual; Michael Feagans, in his official capacity
as a Kansas City, Missouri Police Department Officer, and, as an individual; Alan
Whaley, in his official capacity as a Kansas City, Missouri Police Department
Officer, and, as an individual; Brad Dumit, in his official capacity as a Kansas
City, Missouri Police Department Officer, and, as an individual

*Defendant*s

Chris Onik, in his official capacity as a Kansas City, Missouri Police Department
Officer, and, as an individual; Teddy Taylor, in his official capacity as a Kansas
City, Missouri Police Department Officer, and, as an individual; Christopher
Toigo, in his official capacity as a Kansas City, Missouri Police Department
Officer, and, as an individual

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

————————

Submitted: January 12, 2023
Filed: April 26, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

On October 3, 2012, law enforcement officers conducted a warrantless search at Micah Riggs' business, Coffee Wonk, seizing $460 in cash and what officers believed to be "K2"—synthetic marijuana. According to Riggs' amended complaint, he was charged in state court on three counts: (1) intent to create a controlled substance; (2) possession of drug paraphernalia with intent to distribute; and (3) possession with intent to distribute a controlled substance. The drug paraphernalia count was dismissed before trial, Riggs was acquitted on the possession with intent to distribute count, and the jury deadlocked on the intent to create a controlled substance count. The state re-indicted Riggs, charging him with selling XLR-11, which Riggs asserted was not at the time a controlled substance. After Riggs filed a motion to dismiss, the state dropped all charges. Riggs then commenced this action under 42 U.S.C. § 1983, challenging the legality of the search and alleging several federal and state claims against various individuals pertaining to the "repeated, intentional harassment by officers of the Kansas City Missouri Police Department ("KCPD") over the course of more than three years."

The defendants previously appealed the district court's order denying qualified immunity. Because material disputes of fact were at the heart of the officers' appeal, we dismissed the appeal for lack of jurisdiction. Riggs v. Gibbs, 923 F.3d 518 (8th Cir. 2019). The district court[1] set the case back on for trial, but trial was delayed due to COVID-19. The case eventually proceeded to trial on March 21, 2022, on Riggs' claim that his Fourth Amendment right to be free from

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

unreasonable searches and seizures was violated. On the second day of trial, the district court granted, in part, the defendants' motion for judgment as a matter of law on Riggs' conspiracy claim and dismissed as defendants Michael Feagans, David Barbour, Brad Dumit, and Alan Whaley.

The jury was asked to decide liability for the alleged constitutional violation as to four defendants—Teddy Taylor, Christopher Toigo, Robert Gibbs, and Chris Onik. The jury returned verdicts in favor of defendants Taylor, Toigo, and Onik. The jury found in favor of Riggs on his claim against KCPD Detective Robert Gibbs. If the jury decided in favor of Riggs, the jury verdict instructions directed the jury to write the amount of damages it found on a designated line or, if none, write the word "none." The jury was further instructed to state either the amount of damages it found, or if the jurors found the damages had no monetary value to "state the nominal amount of $1.00." The jury wrote $1.00 on the damages line of the verdict form. After the jury returned its verdicts, Riggs' counsel requested that the jurors be polled. The court polled the jury, accepted the verdicts, read the verdicts into the record, and then discharged the jury. When Riggs' counsel was asked if there was anything further, counsel responded, "No, Your Honor." Even though the jury returned a verdict in Riggs' favor against Gibbs, Riggs did not request that the court submit the issue of punitive damages to the jury.

The issue of punitive damages had been raised earlier in the proceedings. During the instructions conference, Riggs objected to the district court's failure to submit instructions on punitive damages, asserting the evidence established the defendants acted with reckless indifference to his constitutional rights. Defense counsel responded by concurring in the court's decision not to include instructions on punitive damages, arguing the evidence did not show sufficiently egregious behavior for punitive damages. The court made no comment on the merits of the punitive damages claim, nor did it make a ruling dismissing Riggs' claim. Instead, in response to the arguments, the court stated: "My thought on this is I hear you, [plaintiff's counsel], and if indeed the jury does come back with a finding in favor of the plaintiff, I will reconsider that at that time. Okay." Riggs did not object to

this proposed course of action, which effectively bifurcated the trial, such that liability would be decided first, and if a verdict was returned in his favor, Riggs could renew his request that the jury be allowed to consider punitive damages.[2]

On appeal, Riggs contends the district court erred by failing to instruct the jury on punitive damages. He suggests that we should review his alleged error *de novo*. Without specifying a review standard, Gibbs argues the merits of Riggs' punitive damages claim.

While we typically review *de novo* a district court's dismissal of a punitive damages claim, Thurairajah v. City of Fort Smith, Ark., 3 F.4th 1017, 1025-26 (8th Cir. 2021), the district court did not rule on the merits of Riggs' request for punitive damages. After the verdicts were returned by the jury and accepted by the court, Riggs neither requested to proceed on the issue of punitive damages, nor did the court issue a decision dismissing his punitive damages claim. Under these circumstances, Riggs has not convinced us that *de novo* review is appropriate.

So long as a party preserves the issue for appeal, a district court's refusal to give a jury instruction is reviewed by us under the deferential abuse of discretion standard. Id. at 1026 (quoting Torbit v. Ryder Sys., Inc., 416 F.3d 898, 903-04 (8th Cir. 2005)). "If a party does not properly object to preserve the issue for appeal, objections to jury instructions are waived, absent a showing of plain error." Bauer v. Curators of Univ. of Mo., 680 F.3d 1043, 1045 (8th Cir. 2012) (citation omitted); see Fed. R. Civ. P. 51(d). Rule 51(d) of the Rules of Civil Procedure delineates different categories of error:

---

[2]While we recognize that Missouri law is not controlling, counsel should not have been surprised by a bifurcated trial. See Mo. Ann. Stat. § 510.263 (stating "[a]ll actions tried before a jury involving punitive damages . . . shall be conducted in a bifurcated trial before the same jury if requested by any party.").

**(1)  Assigning error.**  A party may assign as error:

> **(A)**  an error in an instruction actually given, if that party properly objected; or
>
> **(B)**  a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.

> **(2)  Plain Error.**  A court may consider a plain error in the instructions that has not been preserved as required by rule 51(d)(1) if the error affects substantial rights.

Here, the district court declined to include instructions on punitive damages when the case was submitted to the jury but indicated it was open to reconsidering the request if the jury found in favor of Riggs.  After liability was determined, Riggs never asked the court to consider the issue of punitive damages at trial or in a motion for a new trial.  Rule 51 "helps to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error."  May v. Nationstar Mortg., LLC, 852 F.3d 806, 819 (8th Cir. 2017) (quoting Mo. Pac. R.R. Co. v. Star City Gravel Co., 592 F.2d 455, 459 (8th Cir. 1979)).  The record demonstrates the district court did not address the merits of Riggs' punitive damages claim because it did not issue a definitive ruling on his request for the jury to consider punitive damages.  The district court, in effect, deferred final ruling on the issue of punitive damages until liability was resolved.  Because Riggs did not object to the process in which the court indicated it would rule on his request for jury instructions on punitive damages, nor did he renew his request for the jury to consider punitive damages after the favorable verdict was returned, we review his claim for plain error.  See Fed. R. Civ. P. 51(d)(2); cf. Westcott v. Crinklaw, 133 F.3d 658, 662-64 (8th Cir. 1998) (holding that if a party fails to object to the "adequacy of a [nominal] jury verdict" when there was "proof of actual injury," we will not correct the verdict absent "plain injustice" or a "shocking" result).

"Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." Bady v. Murphy-Kjos, 628 F.3d 1000, 1003 (8th Cir. 2011) (quotation omitted). We have recognized the untenable position we face when a substantive objection is raised for the first time on appeal:

> To correct the error, we would have to [hold] . . . the district court did not act *sua sponte* to provide a jury instruction that a party should have provided, and then we would have to remedy the problem in the face of the complaining party's relative indifference to it.

May, 852 F.3d at 820 (cleaned up).

A finding that an officer violated Riggs' constitutional rights establishes liability under § 1983, but it "does not necessitate a finding of callous indifference warranting punitive damages." Thurairajah, 3 F.4th at 1026 (quoting Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997)). Riggs' Fourth Amendment claim against Gibbs was not supported by proof of actual damages caused by Gibbs' conduct. In closing argument, Riggs told the jury that he was not asking for any economic damages against Gibbs "but we're once again asking for the events that occurred on October 3rd, 2012, for $3 million in emotional damages." We can only speculate as to the reason for the jury's verdict on damages. On this record, Riggs has failed to convince us that the district court's failure to *sua sponte* raise the issue of punitive damages after the verdict was received "seriously affected the fairness, integrity, or public reputation of the judicial proceedings" such that there would be "a miscarriage of justice if left uncorrected." Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006) (reciting standard to warrant reversal for plain error).

We affirm the judgment of the district court.

_____